UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DARRYL PICKENS**, an individual,

        Plaintiff,

vs.

**HON. ERIC K. SHINSEKI**, Secretary of Veterans Affairs,

        Defendant.

Civil Case No. 3:09-CV-00704-KI

OPINION AND ORDER

Darryl Pickens
8504 N. Woolsey Ave.
Portland, OR 97203

    *Pro Se* Plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Sean E. Martin
Assistant United States Attorney

Page 1 - OPINION AND ORDER

        1000 S.W. Third Avenue, Suite 600
        Portland, Oregon  97204-2902

            Attorneys for Defendant

KING, Judge:

        Plaintiff Darryl Pickens alleges race discrimination, retaliation, and disability discrimination from 2004 to 2008 while working at the Veteran's Affairs Medical Center (the "VAMC").  Pending before the court is the VAMC's Motion for Summary Judgment [79].  For the following reasons, I grant the motion.  Pickens filed a Motion for Congressional Investigation [97], which I deny.

## PROCEDURAL BACKGROUND

        Pickens initially filed the action *pro se*, but I appointed counsel to represent him on May 14, 2010.  Counsel filed a First Amended Complaint on June 25, 2010.  I granted in part and denied in part the VAMC's Motion for Partial Summary Judgment on May 23, 2011, and counsel sought to withdraw shortly thereafter based on Pickens' dissatisfaction with him.  Pickens requested replacement counsel, but I declined to grant the request.  Pickens attempted to file an amended complaint, without permission of the Court.  I directed Pickens to file a motion seeking approval, with the proposed Second Amended Complaint attached.  After I granted the request, Pickens filed a substantially different Second Amended Complaint from the one he had initially proposed.  I entered an order striking that complaint and ordered filed the version that Pickens attached to his motion.  In his Second Amended Complaint [60], Pickens brings the following claims:  (1) disparate treatment in employment under Title VII; (2) retaliation in EEOC

Page 2 - OPINION AND ORDER

proceeding under Title VII; and (3) discrimination due to disability under the Rehabilitation Act.[1]
He incorporates by reference in his Second Amended Complaint many of the factual allegations
from his First Amended Complaint, and I have incorporated those above.

I sent Pickens a Summary Judgment Advice Order counseling him that the VAMC had
filed this Motion for Summary Judgment and instructing him that he must set forth specific facts
in declarations, depositions, answers to interrogatories or authenticated documents contradicting
the facts shown in the VAMC's declarations and showing there is a genuine issue of fact for trial.
Pickens submitted a Motion for Congressional Investigation [97], attaching three discs
containing the recordings of the three day hearing before the MSPB, a one-page filing entitled
Plaintiff's Motion to Deny Defendant's Motion for Summary Judgment and Grant Plaintiff
Exception of this Motion and Instead Rule in Plaintiff's Favor [98], and Plaintiff's Reply to
Defendant's Memorandum of [sic] in Support of Defendant's Motion for Summary Judgment
[99]. In addition to those documents, however, I have considered the answers he submitted and
filed responding to the VAMC's requests for production [74].

## FACTUAL BACKGROUND

Pickens, who is African-American, began working at the VAMC as a GS-5 supply
technician in June 2003. Bruce Osborn interviewed Pickens and recommended that he be hired.
The position requires "work[ing] closely with other assigned team members[.]" Smith Decl. Ex.
A, at 1. The position also calls for contact with a "wide range of people[.]" Id.

---

[1] I previously granted the VAMC judgment as to Pickens' hostile work environment in violation of Section 1981. Neither Pickens nor his counsel alleged a claim for hostile work environment under any other statute. Additionally, I dismissed the portion of plaintiff's fifth cause of action alleging a violation of the Rehabilitation Act for failure to accommodate.

Pickens alleges he received favorable performance reviews throughout his time at the VAMC. Ed Lyman supervised the 15 supply technicians, including Pickens. Lyman nominated Pickens for a workplace award in August 2004. In December 2005, Pickens suggested an improvement in the way supplies were unpacked and inventoried, which he called a "swarm." Another supply technician, David Duck, implemented the idea; Duck earned a $300 workplace award in July 2005 for his work based on another co-worker's nomination. Pickens was nominated for a $125 workplace award in October 2005 for coming up with the "swarm" idea. At the same time, Pickens received a $250 workplace award for helping the VAMC meet a deadline. Early in 2006, Lyman nominated Pickens for another workplace award of $275.

In August 2005, the VAMC interviewed three candidates–Pickens, Duck and a third individual–for a position as lead supply technician. Lyman, Osborn and Kim Wood conducted the interviews and all three gave Duck a higher rating than they gave Pickens. All three believed Duck was the right person for the job.

Pickens alleges he was the target of discriminatory conduct during his employment with the VAMC. Specifically, he alleges (1) he was repeatedly called "boy;" (2) a co-worker, Troy Wilkendorf, assaulted and grabbed Pickens, saying, "Hey boy, let's spar;" (3) that another co-worker, David Deer, chased him and struck him with a cart; (4) Lyman said that Pickens' mother should die; (5) Osborn said that "we do things specifically to bother you;" (6) Lyman said that plaintiff would never advance on his watch; (7) co-workers Duck and Cortland Weider received promotions over him; and (8) Pickens received a smaller bonus than a co-worker for a

workplace-efficiency idea.[2]  Pickens complained to the VAMC about some of the conduct–including the Wilkendorf and Deer incidents, Lyman's comments and Duck's promotion and bonus–which investigated the incidents.

The day Wilkendorf grabbed Pickens, Lyman met with Pickens to discuss it.  Lyman then discussed with Wilkendorf the inappropriateness of horseplay in the work environment.  The next day, Pickens filed an Equal Employment Opportunity (""EEO") complaint, but withdrew his complaint two months later on April 22, 2006 indicating that he "mistook" Wilkendorf's action as hostile.  Smith Decl. Ex. E.  Pickens included in his statement the remark that, "There [was] no further action necessary in this matter."  Id.

In March 2007, the VAMC offered Pickens a job as a supply technician for sterile processing, which offered the possibility of a promotion to GS-6 after 13 months.  Pickens angled for an immediate promotion and, when he learned that was not possible, declined the job.

On November 5, 2007, Pickens loudly complained to supervisors about treatment by co-workers and by Lyman, causing people down the hall to open their doors to observe the altercation.  Pickens said that if he were touched again, he would use his martial arts skills to hurt whoever touched him.  Some people heard Pickens say he would send somebody to the hospital if he were assaulted again.  Pickens was directed to the VAMC safety manager, who learned Pickens had purchased a gun because he believed co-workers were threatening him.  Pickens asked the safety manager if he would be held responsible for actions he took against his co-

---

[2] I previously ruled that the allegation regarding co-worker Rod Winters did not fall "within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  See Yamaguchi v. Dep't of the Air Force, 109 F.3d 1475, 1480 (9th Cir. 1997).  As a result, no part of Pickens' challenge can rely on that allegation.

Page 5 - OPINION AND ORDER

workers, and the safety manager answered in the affirmative. Pickens was excused for the rest of the day. Lyman was so concerned about Pickens' behavior that he sought and received permission to work at the Vancouver VA the next day.

On November 6, 2007, during a morning report lead by Lyman's supervisor, Shirley Ridley, Pickens stood up and announced he had been assaulted three times, including being hit by a cart, and informed those present that if anyone touched him he was going to defend himself even if that meant putting someone in the hospital. The VAMC put Pickens on paid authorized absence without charge to his leave; in this capacity, he continued to accrue sick and vacation leave and receive benefits.

Pickens' co-workers complained to Ridley about feeling threatened. They also approached their union representative about the incidents and filed a formal complaint describing what they called an unsafe work environment.

On November 9, 2007, Lyman requested a fitness-for-duty examination of Pickens. Dr. David Corey conducted the examination, concluding in February 2008 that Pickens was not fit for duty. Dr. Richard M. Kolbell agreed with Dr. Corey's findings in a July 2008 review.[3] On October 6, 2008, relying on these reports, Christina McMullin proposed Pickens' removal from the VAMC for a mental inability to meet the requirements of the job. On October 24, 2008, Pickens responded orally and, on November 21, 2008, David Stockwell terminated Pickens' employment for a mental inability to meet the requirements of his position based on the reports of Drs. Corey and Kolbell. Pickens appealed the decision to the U.S. Merit Systems Protection Board ("MSPB"), which conducted hearings over a three-day period in March 2009. During that

---

[3]The medical reports are filed under seal as Exhibits H and I to Ridley's Declaration.

time, Pickens testified that he did not dispute the events of November 5 and 6, but asserted his statements were triggered by Deer hitting him with a cart. VAMC's Mot. for Partial Summ. J. Ex. A, at 3 [34-1]. The Chief Administrative Judge issued a 36-page written decision detailing the testimony she heard and concluding the following:

> The evidence is noticeably lacking in proof of any coordinated conspiracy among [Pickens'] many co-workers and managers to destroy the appellant or assassinate him. I am unable to discern why Mr. Heublein would suddenly wish the appellant dead or David Deer would want to ram him with a cart, or how a new employee like Mr. Wilkendorff [sic] would become part of the conspiracy so early in his tenure and set out to assault the appellant in his chair. I find the agency's witnesses to be credible, largely due to the consistency of their statements–both with each other and with their own past statements.

Id. at 23. After listing a number of other examples ("Lyman openly wept at the hearing when explaining that he did not wish [Pickens'] seriously ill mother dead but that he was thinking of his own mother in discussing (and granting) [Pickens'] leave request", Wilkendorf thought Pickens was playing but apologized when he realized the truth, and that cart bumps accidentally occur regularly but Pickens was unwilling to accept this possibility even if Deer had bumped him with the cart), the Administrative Judge affirmed the VAMC's decision to terminate Pickens' employment. Id. at 24.

Pickens alleges the VAMC made him undergo a psychiatric evaluation, fabricated the test responses, and terminated him on the basis of the false responses.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material

Page 7 - OPINION AND ORDER

fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

I.   Title VII Disparate Treatment Claim

To prove a Title VII disparate treatment claim, a plaintiff must establish a *prima facie* case of discrimination. A *prima facie* case may be demonstrated by direct evidence of discriminatory intent or may be based on a presumption arising from factors set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Generally stated, the factors are: (1) membership in a protected class; (2) qualification for the job or satisfactory performance of the job; (3) an adverse employment decision; and (4) different treatment from those similarly situated outside of the protected class. McDonnell Douglas, 411 U.S. at 802.

The requisite degree of proof necessary to establish a *prima facie* case for a Title VII claim on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). "The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.' . . . Establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Id. (citations omitted). Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to

Page 8 - OPINION AND ORDER

rebut the presumption of discrimination by articulating some permissible reason for the adverse action.  Id.  "Once the defendant fulfills this burden of production by offering a legitimate, nondiscriminatory reason for its employment decision, the . . . presumption of unlawful discrimination 'simply drops out of the picture.'"  Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993)).

Then the burden shifts to the plaintiff to show that the defendant's reason is a pretext for another motive which is discriminatory.  Id.  Under federal standards, to avoid summary judgment, Pickens may offer direct or circumstantial evidence "that a discriminatory reason more likely motivated the employer," or "that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable."  Anthoine v. N. Cent. Counties Consortium, 605 F.3d 740, 753 (9th Cir. 2010).  When the evidence on which a plaintiff relies is circumstantial, it must be "specific and substantial to defeat the employer's motion for summary judgment."  Id.

The VAMC assumes, for purposes of its motion, that Pickens makes out a *prima facie* case on the first and second factors, but argues that the third element is not met with respect to some events and the fourth element is not met with respect to other events.  Additionally, the VAMC contends it had a legitimate nondiscriminatory reason for terminating Pickens' employment, for promoting others over him, and for giving a larger bonus to a co-worker.

    A.    Adverse Employment Actions

The allegations above regarding being called "boy," Wilkendorf's comment and physical contact, the cart incident with Deer, Lyman's statement about Pickens' mother, and Osborn's statement that "we do things" to bother Pickens are not adverse employment actions for purposes

of a Title VII disparate treatment claim.  See Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (adverse employment action is one that "materially affects the compensation, terms, conditions, or privileges of employment"); Campbell v. Knife River Corp.–Nw., 783 F. Supp. 2d 1137, 1149 (D. Or. 2011) ("habitual harassment . . ., being subjected to racial slurs and harassment by co-workers, and management's failure to do anything to address the situation are not discrete acts and do not, without more, materially affect the compensation, terms, conditions, or privileges of plaintiff's employment in a tangible way." ).

The other actions Pickens alleges are adverse employment actions include:  (1) the VAMC gave a co-worker a larger bonus than it gave Pickens for Pickens' idea; (2) Pickens was terminated based on a psychological exam, when the co-workers who had mistreated him were not required to undergo a similar evaluation; and (3) the VAMC promoted white employees over him.

With respect to the first allegation, the VAMC argues that giving Pickens a smaller bonus is not an adverse employment action because it did not materially affect Pickens' compensation. He received other workplace awards before and after obtaining an award $175 lower than another employee's.  Although "adverse employment action" is defined "broadly" and  the Ninth Circuit has concluded that an adverse employment action is one that "negatively affects its employee's compensation," I conclude that one workplace award of only $175 less than another employee's, considering the fact that Pickens received other awards before and after, is not the kind of action that "materially" affects his compensation.  See, e.g. Tu v. Kaiser Found. Health Plan of Nw., Civil No. 07-968-KI, 2008 WL 3871742, at *9 (D. Or. Aug. 19, 2008) ("isolated occurrence" of burdensome work assignment a factor in concluding it was not an adverse employment action).

Page 10 - OPINION AND ORDER

The VAMC breaks down the second allegation into several discrete parts, arguing that placing an employee on administrative leave and ordering an employee to undergo a fitness-for-duty examination are not adverse employment actions. See Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 891-92 (8th Cir. 2005) (paid administrative leave not a materially adverse action, and citing cases from the Fourth, Fifth and Sixth Circuits); Baker v. Potter, No. 02 C525, 2005 WL 843169, at *23 (N.D. Ill. Jan. 20, 2005) (fitness-for-duty examination not an adverse employment action). I agree with the VAMC's argument, but the focus of the allegation appears to me to be that Pickens was terminated on the basis of a psychological exam that others were not forced to undergo. The VAMC does not dispute that a termination is an adverse employment action.

The VAMC does not appear to dispute that its decision not to promote Pickens constitutes an adverse employment action.

For purposes of this motion, I conclude that Pickens has identified the termination and promotion decisions as adverse employment actions, but the other allegations of harassment and Pickens' contention regarding the lower bonus must be dismissed because he fails to make out a *prima facie* case establishing they are adverse employment actions.

B.     Similarly Situated Employees

The VAMC does not appear to dispute that, for purpose of the *prima facie* analysis, Pickens has shown similarly situated employees were treated more favorably with respect to the agency's decision not to promote Pickens.

However, it does argue, and I agree, that Pickens has not established a *prima facie* case on the final element with respect to his termination. He has not shown that the VAMC treated him less favorably than similarly situated employees who were not African-American in making

Page 11 - OPINION AND ORDER

its decision to terminate him. "Other employees are similarly situated to the plaintiff when they have similar jobs and display similar conduct. The employees need not be identical, but must be similar in material respects." Earl v. Nielsen Media Research, Inc., 658 F.3d 1008, 1114 (9th Cir. 2011) (internal citations and quotation marks omitted). Here, Pickens fails to identify any other employee outside his protected class who made the kind of remarks he did, or who upset a large contingent of co-workers like he did, who were not directed to undertake a fitness-for-duty exam and subsequently removed. See McDonnell Douglas, 411 U.S. at 804 (suggesting "comparable seriousness" of the acts is a relevant factor).

In sum, Pickens fails to establish a *prima facie* case with respect to his termination, necessitating the dismissal of this portion of his disparate treatment claim.

        C.        Legitimate, Non-Discriminatory Reason for the Adverse Employment Actions

Because the VAMC does not dispute that Pickens has met the *prima facie* case with respect to its decision not to promote Pickens, I evaluate its rationale for promoting Duck over Pickens. The VAMC asserts that all three members of the interview committee rated Duck higher than they scored Pickens, and all three agreed Duck was the better candidate. Lyman identified Pickens' lack of computer skills as a factor in his decision not to offer Pickens the promotion. The VAMC has established a legitimate, non-discriminatory reason for hiring Duck over Pickens.

I also hold, alternatively, that even if Pickens met his *prima facie* case with respect to the termination and the bonus, the VAMC has offered legitimate, non-discriminatory reasons for taking the actions it did.

Taking first the termination, the VAMC explains that it placed Pickens on administrative leave and ordered a fitness-for-duty examination as a result of his disruptive conduct on November 5 and 6, 2007, which Pickens' co-workers perceived as threatening. The VAMC terminated him because the results of the fitness-for-duty examination, which was prepared by Dr. Corey and reviewed by Dr. Kolbell, concluding that Pickens was mentally unable to meet the requirements of his position.

Considering the bonus, the VAMC explains that it gave Duck the $300 bonus initially because he worked with co-workers to actually implement the "swarm" idea. In fact, the most affected co-worker nominated Duck for the award because Duck's implementation saved him the trouble of unloading and inventorying the supplies by himself.

The VAMC has offered legitimate, non-discriminatory reasons for taking the actions it did.

D.    Pretext

Pickens has failed to produce any evidence, let alone specific, substantial evidence of pretext in response to the VAMC's explanations for its actions. The only evidence Pickens submits are recordings from the three-day hearing by the MSPB, the testimony of which is faithfully summarized by the Administrative Judge in her decision of April 15, 2009. Pickens does not submit any evidence of his own disputing the conclusion that he suffers from a mental disorder. The testimony focuses on Pickens' November 5 and 6 statements; Pickens does not dispute that he made the statements his co-workers described. He believes he did say he knew how to hurt people and that he had been yelling, but intended his statements to be a warning that he would defend himself.

Regarding the promotion decision, it is possible that evidence of Lyman's comments could raise an inference of discrimination, although I doubt it constitutes "specific, substantial evidence" of pretext, but Lyman was only one of three people conducting interviews. See U.S. Postal Serv. Bd. of Governors v. Aiken, 460 U.S. 711, 713 n.2 (1983) (district court did not commit reversible error when it found an employer committed discrimination based in part on testimony that employer made derogatory remarks about plaintiff and others). Indeed, one of the three individuals on the interview panel was the very person who hired Pickens two years before, Bruce Osborn. See Coghlan v. Am. Seafoods Co., LLC, 413 F.3d 1090, 1096 (9th Cir. 2005) ("strong inference" against bias arises when an employer who hires or promotes a plaintiff later takes an adverse employment action against him); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1288 (9th Cir. 2000) (supervisor hired and fired, raising inference that no discrimination took place).

In sum, summary judgment on Pickens' disparate treatment claim must be granted as no reasonable juror could conclude that the VAMC's explanations are false or that the reason for the adverse employment actions of which Pickens complains were discriminatory.

### E. Remaining Allegations

Pickens raises two outstanding allegations in his pleadings that the VAMC does not address head on. The first is Pickens' assertion that the VAMC and Dr. Corey tinkered with his MMPI test to obtain a result justifying a conclusion that Pickens was mentally incapable of performing his job. The second is Pickens' assertion that Cortland Weider, a white employee, was promoted over him. With respect to both of these allegations, the VAMC asserts that

Pickens failed to provide any responsive documents to substantiate these allegations, requiring summary judgment be issued in its favor.

The problem with the VAMC's argument is that the Court instructed Pickens that if he did not have any documents responsive to the VAMC's requests for production, he need only state that. Having said that, Pickens fails to produce any evidence to support his assertion that the VAMC fabricated the fitness-for-duty results or created evidence of a mental disability. Tellingly, in response to the VAMC's requests for production, Pickens writes, referring to the MSPB hearing,

> In that VA ordered (RECORDED TRANSCRIPT), you will hear Dr. David Corey's own testimony that there were over 100 eraser marks on the FORCED BY MEANS OF EXTORTION, M.M.P.I II, psych exam, that I Darryl W. Pickens was made to undergo or face termination. You will also hear him (Corey); say that his report is based on his field expertise, which he admits is itself based on (SPECULATION)!

Pickens' Resp. to the VAMC's Req. for Produc. 2.

I have listened to the hearing testimony, including the testimony of Dr. Corey. Even assuming for purposes of this motion that Dr. Corey or someone else in the VAMC changed the answers on Pickens' MMPI test, there is substantial support in Dr. Corey's report for his conclusion that Pickens suffers from a mental disorder that precludes him from performing his job at the VA. Dr. Kolbell reviewed the following documents in concurring with Dr. Corey's conclusion: employment records, memoranda, records of correspondence, statements from several employees, a statement from David Drummond, Ph.D., Chief of Psychology Service and member of the Employee Threat Assessment Team, medical records, and Dr. Corey's 149-page file. Pickens has failed to submit evidence of his own raising the possibility that the VAMC's

explanation for its decision to terminate Pickens' employment was false or based on discriminatory reasons.

With respect to Cortland Weider, there is no evidence in the record providing any detail about the allegations. Pickens neglected to raise it in his EEOC complaints, he does not describe it in any of the documents he filed in response to the VAMC's motion for summary judgment, and he does not discuss the incident in his response to the VAMC's requests for production. The documents he disclosed to the VAMC in response to the agency's request includes a statement from Charles Christian discussing the interview and selection of a candidate for the lead tech position, but it is not clear whether Christian is referring to the process resulting in the promotion of Duck or Weider.

Because Pickens fails to offer evidence as to these two allegations, the VAMC is entitled to summary judgment on Pickens' disparate treatment claim. See Wallis, 26 F.3d at 889.

II.    Title VII Retaliation Claim

Pickens alleges that the EEO claims he filed complaining of the incidents set forth above caused the VAMC to retaliate against him. Pickens alleges the VAMC created evidence suggesting Pickens suffered from a mental impairment as a pretext for firing him.

To establish a retaliation claim, a plaintiff can establish a *prima facie* case by establishing the following factors:

> (1) that []he was engaging in a protected activity, (2) that []he suffered an adverse employment decision, and (3) that there was a causal link between h[is] activity and the employment decision.

Trent v. Valley Elec. Ass'n Inc., 41 F.3d 524, 526 (9th Cir. 1994). Then, like the disparate treatment analysis set forth above, the burden of production shifts to the employer to present

Page 16 - OPINION AND ORDER

legitimate reasons for its actions. Plaintiff must then, in turn, "demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was pretext." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

The VAMC concedes, for purposes of this motion, that Pickens engaged in protected EEO contact beginning in October 2005. There is no evidence he complained earlier.

The analysis above regarding adverse employment actions applies to the following allegations: being called "boy," Wilkendorf's comment and physical contact, the cart incident with Deer, Lyman's statement about Pickens' mother, Osborn's statement that "we do things" to bother Pickens, and the bonus decision. These do not qualify as adverse employment actions for purposes of a retaliation claim because they are not actions that are reasonably likely to deter employees from engaging in protected activity. See Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000) (new policies that decreased pay, decreased the amount of time to complete the same amount of work, and decreased the ability to influence workplace policy were found to be adverse employment actions); Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007) (initiation of an investigation and a transfer across the country were adverse employment actions); Brooks, 229 F.3d at 928-29 (declining to hold a job open for an employee, "badmouthing" an employee outside of the job reference context, transferring an employee where salary is unaffected, ostracism at the hands of co-workers, and work assignments with the harasser's friends as long as the friend shows no outward signs of hostility are not adverse employment actions).

That leaves the VAMC's decision to promote Duck over Pickens, and the agency's decision to terminate Pickens' employment. The VAMC argues there is no causal link between Pickens' protected activity and the decisions the VAMC made. With regard to the promotion

Page 17 - OPINION AND ORDER

decision, Pickens' protected activity occurred after he failed to get the promotion, so the VAMC's decision to promote Duck over Pickens is not causally related to Pickens' EEO complaints. This is also the case with the bonus decision; he was nominated and received a monetary award before he engaged in protected activity.

Finally, even if Pickens could state a *prima facie* claim of retaliation, the VAMC has identified legitimate, non-discriminatory reasons for making the decisions it did, and Pickens has failed to demonstrate that there is a material issue of fact showing the VAMC's reasons are pretextual as set forth above in the section on Pickens' disparate treatment claim.

The VAMC is entitled to summary judgment on Pickens' retaliation claim.

III.     Rehabilitation Claim

Pickens alleges that the VAMC violated the Rehabilitation Act because it terminated him due to a perception that Pickens was disabled. In the First Amended Complaint, prepared by his attorney, Pickens alleges he "suffered an adverse employment action, namely termination from his position, as a direct result of Defendant's perception that Plaintiff suffered from a mental disability." First Am. Compl. ¶ 52. In his Second Amended Complaint, drafted *pro se*, he writes:

> Plaintiff is a person who was wrongly accused of having a mental disorder based on contrived evidence and fraud! If there is evidence that DR. David Corey committed perjury during the M.S.P.B. hearing, and his whole report contradicts his findings, then this firing was a sham, and as such, he as well as those other doctors guilty are liable!

Second Am. Compl. ¶ 49.

To make out a claim under the Rehabilitation Act, Pickens must establish a *prima facie* case that: (1) he is a person with a disability, (2) who is otherwise qualified for the position, and

(3) suffered discrimination because of her disability. Walton v. U.S. Marshals Serv., 492 F.3d 998, 1005 (9th Cir. 2007). "Disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).[4] In addition, in order to state a "regarded as" claim, a plaintiff "must establish that the employer believes that the plaintiff has some impairment, and provide evidence that the employer subjectively believes that the plaintiff is substantially limited in a major life activity." Walton, 492 F.3d at 1006.

In his deposition, Pickens explained that he is not disabled, and he does not believe that the VAMC perceived him as being disabled. Specifically,

> Q: So your view is not even that they perceived you to be disabled, but your view is that they concocted–completely concocted–a report, but that you weren't actually disabled, and they didn't actually, in a bona fide way, perceive you as disabled? I just want to make sure I'm saying it right.
>
> A: You are saying it exactly the way I would say it. I don't believe that they thought I was disabled, it was just that you have to have some sort of documents to justify firing a guy, who never touched anybody, for something.

Martin Decl. Ex. A, at 8.

Since Pickens does not believe that he had a disability, or that the VAMC perceived him as having a disability, he has not made out a *prima facie* case for a Rehabilitation Act violation. Furthermore, even if he had established such a case, the VAMC has expressed a legitimate, nondiscriminatory reason for terminating Pickens' employment–that he was not fit for duty–and

---

[4]The definition comes from the Americans with Disabilities Act, but the same standards are used for Rehabilitation Act claims. Fleming v. Yuma Reg'l Med. Ctr., 587 F.3d 938, 940-41 (9th Cir. 2009).

Pickens has not come forward with specific and substantial evidence raising a material issue of fact that the VAMC acted in a pretextual way.

IV.     Other Allegations in the Complaint

In his Second Amended Complaint, Pickens makes a number of allegations regarding the administrative review of the VAMC's termination decision. He alleges that Judge Amy Dunning, at the MSPB, ignored perjury by VA witnesses, allowed Duck's perjury to go unpunished, covered up Duck's false deposition testimony, and that Dr. Corey falsely testified at the MSPB hearing. These allegations overlap with the claims Pickens made in a lawsuit he neglected to prosecute and that has been dismissed. See Pickens v. Shinseki, Civil No. 10-236-KI. Furthermore, Pickens did not seek permission to expand the allegations in this case, which are limited to the VAMC's alleged race discrimination and retaliation against Pickens.

## CONCLUSION

Based on the foregoing, the VAMC's Motion for Summary Judgment [79] is granted. Pickens' Motion for Congressional Investigation [97] is denied.

IT IS SO ORDERED.

Dated this ____20th____, day of March, 2012.

/s/ Garr M. King
Garr M. King
United States District Judge

Page 20 - OPINION AND ORDER